West Courtroom. We have a full week of oral arguments, lots of variety in the docket, lots of interesting cases, and today is right in there with quite a mix of questions. So I think all of you are familiar with the rules in terms of a clock and like that. The main thing to remind you is just to please stay in the microphone. Sometimes it's a little bit difficult to hear, and the folks in the audience often want to hear the answers as well. But primarily, we do record the oral argument to listen back to later and so forth. So if you stay in the mic or keep your voice up, it'll just ensure that we get your answers and we're able to move. I am benefited today, this week, with sitting with Judge Leslie Southwick from Mississippi and Judge Kurt Engelhardt, and so we look forward to moving through these cases. First one up is Evan Crocker v. Navient. Mr. Farrell? Good morning, and may it please the Court. Plaintiff Michael Shibazi received a discharge in bankruptcy in the Eastern District of Virginia. He filed suit in the Southern District of Texas, and in order to affirm what the bankruptcy judge resolved in the case now under appeal with respect to Mr. Shibazi, the Court would have to do three things. First, the Court would have to place itself in direct conflict with decisions of the 2nd, 6th, 7th, 9th, and 11th circuits that are indistinguishable. Second, the Court would have to write an opinion that would find no support in any circuit opinion from any of the other circuits. And third, the Court would have to distinguish binding Fifth Circuit precedent on an untenable ground, and we respectfully submit that the Court should do none of those things. The issue in this case, at least with respect to Mr. Shibazi, is which court is the appropriate court to enforce a discharge injunction granted in bankruptcy, and respectfully we submit that is, under binding precedent, the court that issued the discharge order, which is itself an injunction. And the argument flows like this. Section 524 provides unequivocally that a discharge order in bankruptcy operates as an injunction. So that's step one in the process. Step two is the well-established rule that an injunction can only be enforced by contempt. And third is the equally well-settled rule that contempt must be addressed by the court that issued the injunction. Counsel, let me ask you about Mr. Shibazi's bankruptcy. I take it your client received notice when the bankruptcy was filed? Yes, Your Honor. Okay, and in response to the notice, your client filed a proof of claim in Mr. Shibazi's bankruptcy? I believe that's Navient was handling, was not discharged. Correct. All right, and you base that on the discharge order? We base that, well, the discharge order itself says that any, says nothing other than any, any debts that are discharged as a matter of law are hereby discharged. It says debts, debts that are not discharged says debts for most student loans, but it doesn't specify. Correct. And so your position is that this is a student loan that is non-dischargeable? Yes, Your Honor. Okay, all right. And that's based on our interpretation of 523-8A2, which is a piece of the argument that covers both Mr. Shibazi and Mr. Crocker. But there's nothing to clarify, there was no objection or any motion practice in bankruptcy court where the bankruptcy court was called upon to rule on dischargeability, is that correct? By either party. By either party, right, all right. So we're left with the Virginia Bankruptcy Court stating that most student loans are not discharged, but not specifying which student loans, and as I understand the schedules that were filed, this was the only student loan. With respect to Mr. Shibazi, I believe that's correct, Your Honor. Okay. And so the question then presented is, after the fact, with neither party having sought practice before the discharge in the bankruptcy court to determine whether this particular student loan was dischargeable or not, after the fact and after Mr. Shibazi has paid his loan in full and now wants a determination of whether Navient violated the discharge injunction, which court hears that matter? Is there any particular statutory language or other type of talismanic language in loan documents that state this is a student loan pursuant to such and such statute and it is non-dischargeable in bankruptcy, or is that just left for another day because Mr. Shibazi calls this a student loan, I believe, on his schedules, whereas in the other plaintiff's case, he refers to it as educational, which we can ask opposing counsel about that, but is there anything in the loan documents for either of these plaintiffs that so sets forth that it is a non-dischargeable loan? With respect to both borrowers, the loan documents state that the loan is for education and can be only used for education, and in both sets of loan documents, it says that the loan may not be dischargeable in bankruptcy. May not be or is not dischargeable? May not be, and the reason it says may not be is because even if these loans are non-dischargeable generally, there's a separate exception for any student loan that can become dischargeable if you prove undue hardship, and so all student loans, you would have to use the word may not be because if the debtor proves undue hardship, he can get around the non-dischargeability of any student loan. Okay, so there's no contractual basis for the non-discharge because of the mailings? Well, I believe there is a contractual basis for the non-dischargeability, and that is that the loans are specifically for the purpose of education and may not be used for any other purpose, and that's the factual predicate that then gets us into the application of 523 and the non-dischargeability provisions, and that goes to, you know, decision of this court in the Murphy case on how do you determine whether a loan is a student loan or not. In that case, the borrower argued, well, I actually used my money for non-educational purposes for, you know, joining a frat and for partying and for living expenses and etc., although the loan documents themselves said it was a student loan. The borrower logically said that it's the purpose of the loan at the time of its initiation that determines whether it's a student loan because otherwise a borrower could take out a purportedly student loan, then use it for non-authorized purposes and get it discharged, which makes no sense, so it's the purpose of the loan as set forth in the loan documents that determines whether it's a student loan. Is Murphy your best case on that, or is there some other case that you would cite us to for that proposition? Murphy is the best, and I think only Fifth Circuit case. There are other circuits who have followed that rule, and we've cited them in the brief, but I believe Murphy is the prime Fifth Circuit case on that point. Let me get you back to where you were briefly, which is the authority of this court to act particularly on the Virginia bankruptcy. Neither side, nor does much case law, discuss the effect of bankruptcy rule 4004F, and I'm wondering why not. That rule says a final discharge order may be registered in any other district, and upon registration, that order has the same effect as an order of the court of the district where registered. Why doesn't that take care of this issue of whether the district court in Texas had the authority to operate on this discharge order? Judge Southwick, you're right that the other side has not relied on that provision, nor did Judge Jones cite that provision. I am familiar with it, and I have two responses to that. First of all, that didn't happen here. There was no action by Mr. Shabazzi. There wasn't a certified copy of the order as 4004F says filed in the district court, but Judge Jones really hadn't done anything yet. It seems to me that a certified copy could be used. That rule would need to be interpreted, and I believe there's case law out there that interprets that rule similar to the rule in non-bankruptcy context that says one can register a judgment from one federal district court, non-bankruptcy judgment from a district court, in another district, and the case law says under that scenario, yes, you can register one judgment from District A and District B, but that does not change the rule that if it's an injunction that's issued, and the question is contempt for violating the injunction, it remains the court that issued the injunction that has the only authority to enforce it by contempt. Does the statutory authority or rule authority for doing that have the kind of language that underlies what you just said, have the kind of language that is in 4004, which is the discharge order has the same effect as an order the court were registered? To be perfectly honest, Your Honor, because the other side didn't raise that argument, Judge Jones didn't rely on it, I'm reluctant to tell you that I'm certain that the language is exactly the same, but I believe it is, that whereas the general statute on registering a foreign judgment says you can register a judgment from District A and District B, I believe it generally says that if you do that in the second district, the judgment has the same effect as it does in the first district, in the original district, but enforcing contempt for violating an injunction is a special rule, and that all flows from the Waffen-Schmidt case, obviously that we've cited heavily in our brief, and it says that it is the issuing court that can enforce an injunction by contempt, because by definition, violating an injunction is an affront to the court that issued the injunction in the first place, and so it's that court that should have the ability and the discretion to enforce it through contempt and to determine what kind of remedy to award for the contempt, not some other district. I'm sorry, Chief. Well, let me just follow up on this last point before it goes. I mean, I follow the general proposition about who can enforce the injunction, but it would seem under the rule that Judge Salfagasti, if one records the judgment in the second place, by definition, the court can enforce the judgment, because the whole point of registering it there is so it can be given to the district. So why is it, I will stand in the general notion, but now that it's registered in that court, that court cannot enforce it via injunction. And Judge Stewart, again, since this point wasn't raised and hadn't been fully briefed, I believe that the law under the, not the bankruptcy provision that talks about registering a discharge order, but the general statute on registering a judgment from one district to another, has a carve out in the case law that says that, yes, as registered in the second district, the judgment has the same force and effect as in the first district, except when it comes to enforcing an injunction by contempt. And if I'm right about that, and I believe I am, then I believe that that same principle would apply under the bankruptcy section that Judge Southwick has cited. Well, the last point on that is, it wasn't raised, but, you know, the rule is there, big as Dallas, as they might say. So, you know, we all sort of curious why nobody talked about it, if it's an available spot. I get it, I get it. But my only point is, we may ask at the end of all this for both of you to file some kind of supplement relative to the rule piece and what you said, so we have the whole deal. But anyway, so we don't have to stay on it, but to know, since it wasn't raised, it may be to our benefit that we'll ask a supplemental letter brief to be filed on the applicability or not of that, even though it's not in the case, just so we have the full picture. Understood, Your Honor. The other point I would make on that is, it is a rule, a bankruptcy rule, and, you know, I believe it's axiomatic that rules of procedure cannot create substantive rights that don't otherwise exist. And so even if it were to be interpreted as broadly as it could be, I think it still raises a question of whether, through the rulemaking process, there would be an ability to change what is a fundamental bedrock principle of American jurisprudence, which is that the court that issues the injunction is the court where it needs to be enforced. And, you know, the Alderwood case out of the 11th Circuit is just completely on all fours with this case, and it makes the point that I'm trying to make here to the court absolutely clearly, and you start from the premise that Section 524, which creates this discharge injunction, does not create a private right of action. And it's not just the Alderwood case out of the 11th Circuit that says that. It's the Petrusso case out of the 6th Circuit, the Cox case out of the 7th Circuit, and the Barrientos case, and another one whose name escapes me, out of the 9th Circuit. They all say that. 524 does not create a private right of action. Now, notably, Congress did, with respect to Section 362 of the Bankruptcy Code, which is automatic stay, as the court is aware, Congress did provide a private right of action for violating 362. They amended 524 at the very same time that they created that private right of action under 362 and did not choose to give a private right of action under 524. A few years later, in 2000, a bill was, and this is discussed in detail in the Petrusso case, a bill was introduced to Congress to specifically add a private right of action to 524, and the bill failed. It did not become law. 524 has no private right of action, which is not to say there's not a remedy for violating it. The remedy for violating it is contempt, and that brings us full circle to the Waffen-Schmidt case that says, from this court, that says injunctions have to be enforced by contempt in the court that issued the injunction, and the only basis that's been offered to distinguish that is that that case was not a statutory injunction. It was a case-specific injunction, whereas the injunction here flows automatically from the statute. It's a distinction without a difference because the reason for the rule is not that the judge who issued the injunction handcrafted the injunction. The basis for the rule is that violating the injunction is an affront to that court, and so it is that court who is the court that has been disrespected, so to speak, has the right and the ability and the only right to fashion relief for that violation. Let me come back. Not so much, Dad, but I know the lights can go red. Just on the dischargeability question, I mean, I assume, you know, the number of student loans that there are out there, you know, all over, just seeing this question comes up, you know, recurringly, and you started off about the circuit split that, if we ruled to the contrary, we would be creating. It's a little fathom on why this question on the dischargeability part, not the first issue, hasn't been answered, so just say for me succinctly, and I assume you represent, this has just come up in other courts, right? It has.  It has, Your Honor. Well, some of it seems to be, like, parsing the language, you know, in terms of for an educational benefit and so forth and all of that, so is there a bright line in the cases with respect to the language that, you know, we're focused on? The cases are about equally divided on whether to interpret the dischargeability the way I say or the way my opposing counsel says. For many years after the amendment that added this language in 2005, all the cases went my way. Recently, starting in about 2012, 2013, the cases, some of the cases have started to go the other way, and in our view, the cases that go the other way go way off astray because they violate the fundamental canon that you don't need to go to all these canons of construction and you don't need to go to legislative history if the statute is clear on its face, and the statute here is clear on its face because obligation to repay obviously covers a loan. A loan is an obligation to repay, and a benefit, an educational benefit, even under the analysis offered by the other side, a loan for education is a benefit under the standard definition of benefit, which is a gain or an advantage. Now, they say, well, look to the secondary or tertiary definition of benefit in the dictionary, but on page 35 and 36 of their brief, they make a concession that under the standard first definition you will find in the dictionary of benefit, a loan is a benefit. So we have an obligation to repay, which obviously covers a loan, a benefit, which under their concession is a loan, so an obligation to repay an educational benefit by definition covers a student loan. All right, okay, you have a red light, but you've preserved your rebuttal, and you may have some other questions when you come back up. Thank you. All right, let's hear from Mr. Burge. Thank you very much, Your Honor. My name is Jason Burge. I'm here on behalf of Evan Brian Crocker and Michael Shibazi, who seek to represent a class of similarly situated individuals, debtors who took out loans while students at non-Title IV schools filed for bankruptcy, received a discharge, and nonetheless were subject to Naviance collection efforts. Now, there are two issues in this appeal, but I want to start with the second issue, the merits, because Naviance concedes there's no jurisdictional issue as to Evan Brian Crocker. So we're going to reach the merits on him either way, so I want to start there, and then I'll return to jurisdiction as it specifically relates to Michael Shibazi. And on the merits issue, this dischargeability issue, I'd submit this is a pure question of statutory interpretation, and the court should start with the text of 523A8 and the full text of 523A8, because I think if you look carefully at the whole section, you'll see it's broken into three parts. You've got an A1, which covers federal and non-profit loans. Neither of the plaintiff's loans are covered by that. You've got A2, which is the section Naviance relies on. But then you have section B, which exempts qualified education loans as defined by the IRS regulations. Now, qualified education loans are a subset of private loans that meet a host of IRS requirements. The plaintiff's loans can't be qualified education loans, because they didn't go to Title IV schools, which is one of those requirements. But I think reading the whole statute is so important, because you can see there is a plan here. These three sections achieve different goals, and an interpretation like Naviance has, where section A2 swallows the entire statute, is not a reasonable way to interpret this statute. Because if you look at the statute, private loans of the type that Naviance services are already covered by the other two sections. If you look at A1, if there is a federal guarantee, if the program is funded in part by a non-profit, it's going to be covered by A1. If you look at B, if Naviance's loan meets all those IRS requirements, then the loan will be exempt from discharge under B. Well, what Naviance is here before you today saying is, don't worry about the funder, don't worry about the guarantor, don't worry about any of the IRS requirements. If it's a loan that gives an educational benefit, it's covered. The other two sections are completely irrelevant. Counsel, how does that square with Murphy? Your opponent offered us the Murphy case. Sure. Murphy, I think, is answering a different question. If you look at A1, A1 covers loans funded by the federal government. Well, we have to have, there's lots of federal loans, many of them have nothing to do with education, and we have to have a way of determining is this the type of federal loan that's covered by A1, or is this some other type of federal loan that might be exempted from discharge elsewhere but isn't covered by A8? And so Murphy says, if you take out a loan and you say you're going to use it for education, it's a federal education loan, it's covered by A1. That's the question that's at issue with Murphy. What Murphy didn't say is, if you initially say you're going to use your loan for educational purposes, then no matter any other qualifications of the loan, no matter what school you go to, no matter what amount it is, no matter guarantor or funder, it's covered by A2. That's certainly not what was at issue with Murphy. Now, just to finish that surplusage point, this court in MoneyGram International described the surpluses canon as one of the most basic interpretive canons. A statute should be interpreted to give effect to all of its provisions so that no part will be inoperative, superfluous, void, or insignificant. An interpretation that renders two-thirds of the statute irrelevant blatantly fails the surplusage canon. And then I think if you look at the specific language of the provision at issue, it's an obligation to repay funds received as an educational benefit, scholarship, or stipend. When looking at that, this court should consider those three words together. It's a basic logical canon. A word in a list should be defined together, so-called nascitur asocius. The provision isn't just educational benefit. It's educational benefit, scholarship, or stipend. And scholarships and stipends are educational grants made by third parties you don't normally expect to repay. That's consistent with our interpretation of benefit, a payment received from an insurance company, an employer, or the state that you don't expect to repay unless you violate a condition. As the court below recognized, the grammar of the statute cuts against Navient's position as well. Congress didn't say funds received for an educational benefit. And for is the preposition you'd use if benefit meant an advantage or profit gained from something. They referred to funds received as an educational benefit. And that difference between for and as is relevant because as is the phrase you'd use if you're talking about the character of the funds themselves. Here, the benefit is the funds. And that's the understanding you have with benefits. The benefits you're talking about are a payment. You're not talking about some advantage or profit gain. The court in Nipover in the Western District of Pennsylvania noted the distinction well when it said the use of the word as in the phrase an obligation to repay funds received as an educational benefit, scholarship, or stipend suggests the predicate of that section, educational benefit, scholarship, or stipend, refers to the character of the funds, not the purpose of the grammar. Additionally, and a lot of courts have noted this as well as the court below, Congress knew how to use the word loan. It used the word loan in A-1. It used the word loan in B. It didn't use the word loan in A-2. And I'd submit it strains reason to suggest that the one provision in this statute that doesn't use the word loan is the one that's meant to cover all loans regardless of guarantor, fund or amount, school, any other condition. That's just not a reasonable way to interpret this statute. Now, we've pointed you to legislative history. I know Navient disputes the quality of the legislative history, but what I'd submit is the important point from legislative history is we've laid out a story of how we got here. And originally, Congress exempted federal and nonprofit loans from discharge. Back in 1990, in response to the Eighth Circuit's decision in Smith, Congress exempted conditional educational grants from discharge and they added the language at issue here in 1990. An obligation to repay funds received as an educational benefit, scholarship or stipend. No court from 1990 to 2005 thought that language covered private student loans. Then in 2005, Congress revisited the statute and explicitly covered private student loans by adding the language about qualified education loans. So it sounds like they've expanded it twice, both in 1990 and 2005, Congress has sought to expand the scope of non-dischargeability. Is that correct? Certainly, but not to everything. And I'd submit that Congress, when it added qualified education loans, would have been shocked to discover they didn't need to do that because the language one section earlier already covered every imaginable type of qualified education loans. I mean, why have a specific exemption for a loan that meets all those requirements if the section before it covers any kind of loan used for any educational purpose at all? Counsel, cite me to something in the record, either the record on appeal or in the bankruptcy court record, that specifically states for either of these plaintiffs that the loans at issue were discharged. Well, there's not going to be anything because there is never in a standard chapter 7 a specific statement that the loan at issue is discharged. So we're left with just this debts for most student loans, not some, most student loans. Which is the boilerplate language used in every single discharge. I understand, but you're relying on that the most, meaning that you fall within the smaller group of loans that are not discharged, or I should say that have been discharged. Is that correct? Correct. I mean, most means almost, means the majority of. Well, I think if you look at the student loan program, you know, what you'll see is that the vast majority of student loans are federal student loans. They're private student loans. They're loans that are secured through the college offices, which are going to be qualified education loans. What we're talking about here are loans to go to technical schools. It's a much smaller basket of loans than student loans more generally. And to give you an example for this, I mean, we've got an agreed order in this case where Navient agreed to stop collection on all the loans that are at issue in this case. We're talking about 50,000 loans total for 30,000 borrowers out of the entire country who are covered by this case. That is a tiny, tiny fraction of the total number of student loans out. What's the, now that you mention it, what's the status of the, was there an attempt to certify a class or a pleading that sought class certification at some point? We had an initial, we've filed a motion for preliminary injunction in sort of an interim class certification to obtain injunctive relief to simply stop collections during the pendency of the case. After we filed that, Navient, we agreed to withdraw that when Navient agreed to voluntarily stop collections, as to those people. In terms of where we are as a matter of procedure, we were in the midst of class certification discovery when this motion was filed, so we have not yet filed our motion for class certification. It was going to be due shortly after this decision was rendered. So that hasn't yet been briefed. Assuming we go back down, we will brief that shortly, and those issues will be in front of the court and fully briefed shortly. Yeah, I realize it's not in front of us now, but it would seem like the issue would be whether your loan falls within the most student loans that have not been discharged or the minority of loans that would arguably fall within what you've just set forth. Well, I think most student loans... I mean, that's going to be hard to certify a class when you think there's, I mean, a lot of people aren't going to be part of that group represented by Mr., is his name Haas, by the way? His name is now Crocker. Okay, and what was the circumstances of that? Well, he went through bankruptcy as Haas, and he's seeking a fresh start, so he's changed his name to Crocker. Okay, and he did that legally through all of the state... Okay, all right, okay. Mr. Shabazzi similarly went through bankruptcy of Virginia and decided to move and get a fresh start in Houston. So I think the answer to that, Judge Englehart, is that most student loans is an attempt by the people who are writing a discharge order that's meant to be understood by many pro se bankruptcy people as to incorporate into the statute, I mean, into the order 523A8, which I would submit probably does cover most student loans. But the way that this is interpreted is that when a discharge is entered, it is the creditor's responsibility to determine whether their debt is discharged or not. And to do that, they go look at 523A, all of the various discharge exemptions. And to the extent they think there is a dispute about whether or not a particular debt was discharged, it's the creditor's obligation to take that dispute to the bankruptcy court and get it resolved, or alternatively, to continue to collect with the risk that they're violating the discharge order. But it is not the bankrupt debtor's responsibility to get a determination about whether the debt is covered by 523A. And so here, I think most student loans simply is a way to refer back to 523A8. And I would submit our interpretation of 523A8, in which A2 does not that is not guaranteed by the government or a nonprofit, are not going to be covered by A1, are not going to be covered by A2, are not going to be covered by B, which is why I feel like we've got a class that is all going to fit outside that most student loans. But the reason for that is we're covering a tiny subset of the student loan market. It sounds like you are arguing, and I didn't see it in the brief, so maybe you have waived the waiver argument. Are you saying that Navient has waived its right to contest dischargeability by not filing an objection to discharge when the bankruptcy was pending? I'm not saying they've waived their right. I'm saying that by continuing to collect, they're taking the risk that they're violating the discharge order. There's never been a finding, one way or the other, about whether this particular loan was discharged. But the order discharges the debt without any particular finding. So if Navient has continued to collect, in violation of the discharge order, they're violating that discharge order without any particular finding. I guess my final points on this statutory interpretation issue is I think if you look at the lower court decisions, both parties have cited a lot of them to you. Opposing counsel conceded they're pretty even. I think what you'll see is if you look at the better reasoned decisions, the ones that seriously consider the statutory interpretation argument and consider these issues, you'll see that they largely come out against Navient's interpretation of educational benefit. Most of the cases we ask opposing counsel what his best Fifth Circuit case is. What's your best Fifth Circuit case supporting your interpretation? I don't have a Fifth Circuit case. The Fifth Circuit hasn't. You want one from us. That's why we're here today, because we need an appellate decision on this. Okay. I think there has been very little circuit-level decisions, but there have been. What's your best circuit, from any circuit? No circuit. To support your position. Okay. Consider this. The Second Circuit issued a sort of summary affirmance of a lower court decision that's a single paragraph and doesn't really address the issues at all. That's the only time a circuit court has addressed this issue. Let's assume that we're not prone to take a deep dive into the legislative history as necessarily helpful at all, but stay within the statute itself as the mode of getting there. So restate your best path for what you're arguing within the statute. You just say they're relying all on A-2, and that urge is too much. You're saying B of the statute is really what gets you home? My path is that A-1 covers federal and non-profit loans. And everybody agrees that that's not enough. A-2 covers conditional educational grants. If you get a payment from your employer to go to school, if you get a scholarship, if you get a stipend like the Eighth Circuit's decision in Smith, and you are forced to repay that back because you don't meet the requirement, you don't serve as a physician in an underserved area after you finish school, you have to repay that. That's covered by A-2. Private educational loans are covered by B if they meet the qualified education loan standards. That makes all three sections of the statute relevant. That meets the grammar. It meets the logical canons. That's the correct way to interpret this statute. One thing I would note is that— Now, the circuit's cases that you say support your view of the case, does their analysis mirror what you just said or something different? There is not a circuit court case that really analyzes this at all. The cases I think cite this or support this are cases like Campbell, Dufresne, Esangui, Naipaver, and Homayden, but they're all from the bankruptcy court level. This has largely been analyzed by bankruptcy courts to date. I guess the final point is the standard for interpreting a discharge exemption. In matter of Miller, this court noted that exemptions from discharge are to be interpreted narrowly in favor of discharge and debtors. If this issue is ambiguous, you should interpret it in favor of discharge in favor of the debtors. With that, I think the bankruptcy court got it correct on the merits issue, and now I want to turn to jurisdiction and briefly discuss how we got here on jurisdiction. Michael Shibazi took out a loan in 2002 to attend the STMC training school in Virginia. This wasn't a usual college experience. This was a weekend computer class where the instructor quit two weeks in. Nonetheless, he paid on the loan for many years until in 2011 he declared bankruptcy. After bankruptcy, he moved to Houston, Texas. He still lives there today. Michael testified in this case, it's in the record below, that Navient continued aggressive efforts to collect on this loan. They called him eight times a day. They called his wife. They called his wife's employer. So in 2016, he filed an action in Houston where he lived at the time to seek to stop that. Now, we've discussed what's happened in the case below in terms of the preliminary injunction because we've obtained relief so far on behalf of, or temporary relief on behalf of 30,000 borrowers and 50,000 loans, and we were in the midst of class certification discovery when this motion was filed. What I think on the jurisdictional point is that there is a remarkable concession in the reply brief. Navient concedes, we're not here talking about jurisdiction. There's no subject matter jurisdictional issue. There's no constitutional jurisdictional issue. There's no personal jurisdictional issue. They acknowledge Michael has standing. The bankruptcy court has jurisdiction under 1334, and the bankruptcy court has personal jurisdiction over Navient. What they're contending is that, quote, prudential considerations require that the bankruptcy court refuse to consider Michael's claims, even though he lives in Texas, and the defendants called him eight times a day in Texas. Navient submits it would be prudent to force Michael, I guess, to make a pilgrimage back to Virginia to get this decision made by the bankruptcy court in Virginia, and I guess for any other debtor to have to return to the place they got their bankruptcy discharge. Wouldn't he also be able to avail himself of 4000F, as Judge Southwick mentioned earlier, to opposing counsel? He didn't do that. Sure. And frankly, I think 4004F, if you read it, it is a permissive, not a mandatory requirement. He certainly could file 4004F, and if this court instructs us that we need to file 4004F, we will certainly do that when we get down below. I don't think if you look at 4004F, it is a requirement to obtain relief from the bankruptcy court. The fair way to read it is if you want to enforce it in another jurisdiction, you need to file it, but that's probably something you both could helpfully address later in written filings. It seems to me the point that seems fair in the general understanding of the operation of courts that is being made by your friend on the other side is that contempt is a very direct attack on the authority and standing of a court, standing is a bad word because it invokes other things, on respect properly given to a court. And the court is the one that issued the order. Now, you have all your arguments about the generic nature of the order and that sort of thing, but that is the general rule. So do you have, what's your best case to support that you can get around that fairly standard long-term requirement that contempt of a, to a court needs to be brought up to that court? Well, I think this court in Wilbourn recognized that the judge who entered the order, you don't have to go back before that judge. It is still a court, the district court of the southern district, the eastern district, whatever you may be. So there is some slippage maybe there, but you're still talking about the court that issued the order. The court on the top of the order says southern district of Texas. Sure. Oh, I think the point here, if you look at the Waffen-Schmidt decision, that's a specific injunction entered by a judge. It's sort of sui generis to the case. It was an injunction on transferring or alienating assets. And there, you might want to go back in front of that judge and determine what exactly did he mean by that as a particular transaction really affect what he's seeking there. Here we're talking about a uniform nationwide injunction that is the same in every district across the entire country. We're talking about the bankruptcy law, which by constitution is required to be uniform across the entire country. And we're talking about an injunction created not by a judge but by statute that courts in the southern district of Texas interpret multiple times a day. And I'd submit we're here talking about prudence. What is prudent about forcing a man who lives in Houston, who is being affected by behavior in Houston, to have to return to Virginia when the courts in Houston interpret this exact injunction multiple times a day? I don't think the Waffen-Schmidt case speaks to this. I think if you look at the Alderwoods case, which is the only case that I think is really in direct conflict here, the Alderwoods case relies on Waffen-Schmidt but interprets Waffen-Schmidt in a way that Waffen-Schmidt won't really support. When you're talking about a statutory injunction, the specific thought process of the judge is irrelevant. In fact, as the amicus points out, this is a uniform order. It's often entered by the clerk of court, assuming you've met all the requirements. There may not even be a judge who's influenced the case. So the idea that Michael Shabazzi, for prudent reasons, has to go back to the eastern district of Virginia ... But we're not going to be deciding the case based on what's prudent. I mean, it's an argument, but we're not likely to come down on what's prudent. It's going to be whether or not the statute, the applicable statute, or the bankruptcy code, or something else drives that result. Prudence, to me, would have been go through 4004F and register it. It just seems like low-hanging fruit, as opposed to a big lawsuit. It says may, but it's like, if you want to register, there's a provision. You go do it, as opposed to filing a big, giant lawsuit to get to another end. To your point, it's not the end of the question for where you want to be, but it just seems like low-hanging fruit. If you want to register, you go register it, and then you make the other, as opposed to not doing it because it's this bigger matter. My point is, here you're talking about prudence, but that's not likely the mode of analysis we're going to be following. What's more prudent for the debtor when you're coming in asking for, in effect, extraordinary relief? Enforcing an injunction. You heard Judge Salford's question. That is a narrowly construed power of the court, et cetera. The case is not going to come down on what's more prudent to go here or go there. It's going to be what are the cases that compel the answer that you're urging, that the general notion of injunctive relief lies with the court that issued the injunction, as opposed to nothing in the bankruptcy code or the statute that says on a discharge order that there's nationwide enforceability. In other words, another way, if that was Congress's intent, that that be the case, where in the statute or the code would it say that? I think if you look at this court's decisions, in particular, National GIPSA and continuing forward, you'll see that a claim under 524A arises under the code. So the bankruptcy court has jurisdiction under 1334. I think if you look at the Cano decision, it lays out very clearly the line here that the court has jurisdiction under 1334. There's no argument. And the injunction here, it's not an injunction issued by the court. The court issued a discharge order which has the effect of an injunction per statute. And I think that's a very big difference from an injunction issued by a judge after a preliminary injunction motion or some other specific proceeding in front of that judge. We're talking about a uniform nationwide injunction that's the same in every court around the country. All right. Thank you, sir. Thank you very much. Okay. We're back to you, Mr. Farrell, in rebuttal. Thank you, Your Honor. To the point counsel just made that the injunction here flows from a statute, and Judge Jones below relied on that very point, it doesn't get them where they need to go. Because if you divorce the injunction piece, set aside the injunction piece, and say what's really going on here is the court is enforcing the statute, you come full circle. Because the statute does not create a private right of action. That's the Alderwood case. That's the Petruzzo case. So the only way to enforce it is not through a private right of action, an action to enforce the statute in the abstract. You enforce it by getting contempt for violating the injunction, which brings us right back to Waffen-Schmidt. And on the point that, well, in Waffen-Schmidt it was a case-specific injunction crafted for that case, not a uniform nationwide injunction, I would direct the court to the Anderson case out of the Second Circuit. Neither the statutory basis of the order nor its similarity, even uniformity, across bankruptcy cases alters the simple fact that the discharge injunction is an order issued by the bankruptcy court, and the bankruptcy court alone possesses the power and the unique expertise to enforce it. Let me ask you a question. Yes, Your Honor. Just on the discharge, not so much the jurisdictional piece, but on the dischargeability, I mean, flipping aside, it would just seem that Navien and other similarly situated lenders, blody, blody, given the universe, you know, would have had an interest in having sort of a uniform answer about this. If your client or others ever sought a declaratory judgment ruling, you know, on this dischargeability issue, you know, to have, you know, a uniform ruling. I mean, it just seems like lenders wouldn't want to be bouncing all over the country with different answers from different circuits and kind of gotten an answer once and for all. No? Couldn't agree with you more, Your Honor, and that's precisely why we asked the bankruptcy court here to allow this to come up on an interlocutory basis so we could get a final answer. The reason it didn't come up in this way when the statute was first amended in 2005 is because, as I said, for years courts interpreted it our way, and there was no really room for any uncertainty. The uncertainty only came in recently in the past few years as courts started to go the other way, and we chose this vehicle through interlocutory appeal to finally get to what Your Honor is suggesting is a final answer. To Judge Engelhardt's point about, you know, did Navient have a burden to go to the bankruptcy court in the case itself and get this resolved? The answer to that is no. 523 obviously has lots of other discharge exceptions in it, and 523C1 specifically identifies a subset of discharge exceptions, not educational loans, but other ones where the burden is on the creditor to go get a decision in the bankruptcy case. That's 523C1, and it doesn't apply to A8, which is the discharge exception we're relying on. So the answer is we had no affirmative obligation. Now, we could have, but so too could the debtor. We had no obligation to do so. With respect to the statutory interpretation question, it's undisputed that the purpose of the 2005 amendments was to bring private education loans within this discharge exception. Now, what counsel ignores and what all the cases that go his way ignore is that this language, obligation to repay funds received as an education benefit, had been in the statute prior in the 1990 amendment, but it was in a subsection that was together with this discussion of governmental and non-profit loans. And what Congress did in 2005 is they added subpart B, which is the qualified education loans, but they also took the language that I'm relying on in A82, and they broke it out. They took it out of the section where it had been grouped with governmental and non-profit loans and put it as a standalone section. And Congress is presumed to have had a purpose when Congress did that, and it now exists as a standalone section. And it was specifically, we think, to address cases that had previously, before 2005, said that because this obligation to repay language is in the subsection that deals with government and non-profit loans, it only applies to government and non-profit loans. There was a series of cases involving truck driving schools where courts said you don't get there because this obligation to repay language is tethered to governmental and non-profit loans. So in 2005, Congress strips it out and puts it as a standalone section, which it did in conjunction with also expanding the statute to otherwise cover private loans in subpart B. Senator Clarkson mentioned some number, 50,000 or whatever, some number of cases that are sort of undetermined. So is in fact, I mean, there's some number of cases in the thousands that are just sort of on hold until this question is answered? Well, what happened was, in this case, they sought a preliminary injunction on an interim class basis. And after hearing on that motion, Judge Jones looked at me and said, you know, counsel, would your client consider just agreeing to a moratorium on collection while these issues are being sorted out so I don't have to rule on a preliminary injunction if you do it by agreement? And frankly, we agreed to that because it seemed like a logical suggestion. So there is a universe of, I don't remember the exact number, but tens of thousands of loans that by agreement would be, that would otherwise be included in the proposed class here. But by agreement, Navi said, in the interim, without prejudice, you know, it's very clear that it's without prejudice to the collection. And that, I believe, is the universe counsel was referring to. So that universe, though, the 10,000, those are just open cases where people are still repaying them. They aren't cases that are in bankruptcy or... These are cases where the debtors got a bankruptcy discharge. Okay, so they're all ones that are in the bankruptcy. Post-discharge, Navi tried to continue to collect on them, believing that they were not discharged and would be the subject of this class if it were ever certified. And I see my time is up. I would... Finish your thought. Your Honor, I do think it would be helpful to the parties and the court if we were allowed leave to file a supplemental submission on the 4004F. So I would respectfully request that opportunity and respectfully request that the court reverse the decision below. Thanks. Yeah, so we'll just ask both of you to file within 15 days, no more than that, simultaneous letter briefs, principally addressing the rule that we discussed. But, you know, we'll take all the help we can get. Don't rewrite another 50-page brief. The principal question is on the rule. The discharge question is a little thorny, so we'll take what's helpful. Principally, you know that question, but the argument has helped us, I think, to at least get a sense of, you know, where the litigation is, its posture, and what's out there. We'll do our best to get it moved through. But I guess both of you agree, if we were to affirm the district court, we'd have a clear, bright line, circuit split. Both of you agree to that? Okay, and your views on what? The dischargeability or the jurisdiction issue? If you affirm the decision, well, there clearly would be a circuit split on the jurisdictional question, not just with Alderwood in the 11th Circuit, but with several other circuits. There would arguably also be a circuit split on the dischargeability question, because the 2nd Circuit, in the DeSormes case, did rule our way on the statutory interpretation. Now, I concede it was a summary affirmance. It's a one-paragraph opinion, but it is an opinion that will two-fold this. Number one, file the letter of agreement addressing the rule mentioned. And then the second part of it, address the extent to which a circuit split would be created by a ruling from this court on either or both of the points, and clearly set forth the nature of the proposed circuit split. You follow what I'm saying? I mean, just honing in on, he says it's just on the jurisdictional issue and not the other. On the other hand, you've cited cases, as you say, that started off one way, went another way. Some of these cases seemingly are bankruptcy decisions and not circuit decisions. On the other hand, you cited the 2nd Circuit, so it'll help to sort of crystallize this so we have a better sense of the big picture, if you will, of if there really is a split or not. But particularly, you know, between or among the circuits, you know, on this and honing in. I mean, it just don't say it's a circuit split, but I mean, focus in on it. If it's on this language, parsing that, I mean, it'd just be helpful to sharpen up. The briefs are kind of, you know, sort of everywhere, but to hone in on that point I think would be helpful just to crystallize where it is and so forth. So if we're marching up that hill, we at least know what the hill is. Okay? All right. Thank you. All right. Appreciate the briefing and the oral argument. I guess I should have asked. You all okay with that? Is that okay with you? With the directive? Okay. Okay. Yeah, yeah, yeah. Right. No worries. For all that stuff.